**IN THE COURT OF APPEALS OF IOWA**

No. 18-0933
Filed August 15, 2018

**IN THE INTEREST OF M.R.,**
**Minor Child,**

**M.R.,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, William A. Price, District

Associate Judge.


        The minor child appeals from a provision of the dispositional order in this

child-in-need-of-assistance proceeding. **AFFIRMED.**


        Jane M. White of Jane White Law Office, Des Moines, for appellant child.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Kimberly S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for

minor child.

        Sarah E. Dewein of Cunningham & Kelso, PLLC, Urbandale, for

custodian/guardian.


        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

The minor child appeals from a provision of the dispositional order in this child-in-need-of-assistance (CINA) proceeding.  He challenges the requirement that he "participate in and complete a second psychosexual evaluation."

The fifteen-year-old child, M.R., came to the attention of the department of human services (DHS) in October 2017 when his cousin/adoptive sister reported he had sexual contact with her.[1]  M.R. was removed from the family home and, after several continuances, an adjudication hearing was held on February 8 and March 12, 2018.

On March 14, the juvenile court entered a CINA adjudication order, which states in part:

> The court makes the following specific findings of fact: [M.R.] on or about 2017 sexually abused S.G. (age 7) by touching her genital area under her clothing with his hand and placing his penis in her mouth.  This occurred in the family home.  The court finds the testimony of [child abuse investigator] Susan McManigal credible on this issue [as] well as [the abuse investigation report] entered into evidence.

The court also found that P.G.'s husband, M.G., had sexually abused S.G. while residing in the family home with M.R. and S.G.[2]  On April 10, the court ordered M.R. to participate in a psychosexual evaluation before the dispositional hearing. The order entered also granted M.R.'s application for an expert chosen by M.R. and M.R.'s counsel, Dr. Kirk Witherspoon.

---

[1] M.R. lived with his biological great grandmother, P.G.; her husband, M.G.; and two of M.R.'s cousins.  M.R. and his cousins have been adopted by P.G. and M.G.

[2] The two other children were removed from P.G.'s home in December 2017 after S.G. recanted claims of sexual abuse, saying her biological father had told her what to say, and a DHS worker became concerned P.G. was coaching the child.

On May 11, the dispositional hearing was held, at which a psychosexual evaluation report was admitted into evidence, which was prepared by Dr. Witherspoon, a clinical and forensic psychologist. While the State did not object to admission of the report, counsel did express concern about the report:

> I do have a number of concerns with this evaluation. My main concern is the finding that this child does not need to be a CINA based on his review of the same evidence that this Court reviewed and made a finding that there was a need—that the child needed to be a child in need of assistance. I have not seen a psychosexual evaluation that looks like this previously. There does not seem to be a lot of conversation about the actual testing that took place and how it relates to the findings contained in the report. I do think that another evaluation would be appropriate. . . .
>
> I know the child would resist doing another evaluation. Whether or not the Court determines that we need to do another evaluation based on what's contained in Dr. Witherspoon's report, I do think, based on [M.R.'s] contact with [P.G.] and his behavior at YESS, we can move forward in returning him to [P.G.], which I think is the main area of contention between the parties prior to this point.

The juvenile court expressed concern that Dr. Witherspoon "starts with the assumption that the court erred in its ruling [finding M.R. sexually abused S.G.]" In response to the court's observations, counsel for M.R. made a professional statement concerning additional conversations she had with Dr. Witherspoon in an attempt to allay the court's concerns.

The guardian ad litem also expressed concern about the evaluation report.

> Certainly, based on my review of Dr. Witherspoon's credentials, I was expecting something with greater detail that talked about the objective testing that was done, what those results of that testing would be. This evaluation is absolutely not what I was expecting.
>
> I would agree with Ms. White [M.R.'s attorney] with respect to—I think the report lays out what the re-offense rate for adolescents is. And that is statistics I've heard not just through Witherspoon, but other trainings on that issue. I know that statistic is accurate. But the information that's contained in this report really seems one-sided,

4

to one extent, and without the benefit of the objective testing and how he arrived at some other conclusions within there.

It is problematic[] to me and not helpful in terms of how we move forward in providing the appropriate level of services, if any, to [M.R.]

The court observed,

I too will agree this is a unique report, unlike any other psychosexual evaluation I've ever seen, in that there are no—there's not references to any actual testing that was done other than, apparently, a discussion, which is not out of—I mean, the discussion itself is not out of order. That's a part of any psychosexual evaluation, but there's not even mention of any other testing, much less results.

The juvenile court confirmed M.R. was a CINA, returned M.R. to P.G.'s custody under DHS supervision, adopted the proposed case plan, and required M.R. to undergo a second psychosexual evaluation, presumably to be arranged by DHS.

M.R. appeals.

We begin by noting that M.R. has not challenged his adjudication as a CINA or the disposition itself. Rather, M.R. asserts the juvenile court abused its discretion in ordering him to submit to a second psychosexual evaluation.

M.R. does not challenge the authority of the juvenile court to order him to undergo an examination. Iowa Code section 232.98(1) (2017) provides that "a physical or mental examination of the child may be ordered" by the juvenile court "after a hearing to determine whether an examination is necessary to determine the child's physical or mental condition." *See In re W.C.*, No. 13-0314, 2013 WL 1751435, at *3 (Iowa Ct. App. Apr. 24, 2013) (recognizing section 232.98 applies to psychosexual evaluations); *see also In re J.F.*, No.14-1017, 2014 WL 5252719, at *4 (Iowa Ct. App. Oct. 15, 2014) (accepting that a parent may be ordered to

undergo a psychosexual evaluation "to determine what services need to be offered to facilitate the possible reunification" of the family). However, M.R. observes no party objected to the appointment of Dr. Witherspoon and no party subpoenaed the expert to testify.[3] M.R. argues that because there has been no showing of a flaw in the methodology utilized by Dr. Witherspoon, there has been no showing of a need for a second evaluation.

Because the juvenile court "may" order a physical or mental examination, *see* Iowa Code section 232.98(1) (providing that evaluations "may" be ordered), we review the order to have a psychosexual evaluation for an abuse of discretion. Thus, we may only reverse the district court's ruling when "it rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, ___ N.W.2d ___, ___, 2018 WL 3322921, at *2 (Iowa 2018) (describing abuse-of-discretion standard of review). "A ruling is clearly unreasonable or untenable when it is 'not supported by substantial evidence or when it is based on an erroneous application of the law.'" *Id.* (citation omitted).

The juvenile court explained its concerns about the evaluation report submitted, including the lack of testing results and objective findings. The State and the guardian ad litem expressed concerns about the adequacies of the report and the evaluator's apparent premise that the child should not be adjudicated a

---

[3] Counsel for M.R. informed the court:
> We talked about having [Dr. Withspoon] here. It's unfortunate because these are the discussions that I had with him. At one time the State was talking about having him here. Then they decided not to. I talked about having him here. He was willing to come do that. There wouldn't be another cost involved.

CINA.   The order of a second evaluation is not clearly unreasonable or for untenable reasons.  Finding no abuse of discretion, we affirm.

**AFFIRMED.**